# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42988

STATE OF IDAHO, )
)
    Plaintiff-Respondent, )
)
v. )
)
MARCELINO B. BAEZA, )
)
    Defendant-Appellant. )

Twin Falls, June 2016 Term

2016 Opinion No. 116

Filed: November 2, 2016

Stephen Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. Jonathan Brody, District Judge.

The district court's judgment of conviction is affirmed.

Eric Fredericksen, Interim State Appellate Public Defender, Boise, for appellant. Ben P. McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Ted S. Tollefson argued.

_____

HORTON, Justice.

Marcelino Baeza appeals from the district court's judgment of conviction for one count of lewd conduct with a minor child under the age of sixteen involving his five-year-old niece, J.C. Baeza argues that allowing J.C. to testify at trial through closed-circuit television violated his due process right to a fair trial and presumption of innocence and that the district court failed to adequately consider the relative rights of the parties under Idaho Code section 9-1806 when it ordered the alternative method for presenting J.C.'s testimony. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2013, the Blaine County grand jury returned an indictment charging Baeza with two counts of lewd conduct with a minor child under the age of sixteen, a violation of Idaho Code section 18-1508. Both counts alleged that Baeza had sexual contact with his five-year-old niece, J.C. Count One alleged manual-genital contact and Count Two alleged manual-anal contact.

1

On January 9, 2014, the State filed a motion to allow the child witness to provide testimony by an alternative method. The State argued that its key witness, J.C., was a five-year-old child who would suffer serious emotional trauma if she were required to testify in open court or confronted face-to-face by Baeza. At the hearing on the motion, the State called Tami Kammer, a licensed clinical professional counselor. Kammer testified that J.C. was suffering from post-traumatic stress disorder and recommended that J.C. not be required to testify in open court or in front of Baeza. The State argued that under Idaho Code sections 9-1805 and 9-1806, J.C. should be allowed to testify through alternative methods. On January 17, 2014, Baeza filed a written response to the State's motion. Baeza argued that allowing J.C. to testify through closed-circuit television raised constitutional questions under the Confrontation Clause and Baeza's due process right to a fair trial and presumption of innocence.

On March 4, 2014, the district court issued a pretrial order regarding an alternative method of presenting J.C.'s testimony. The district court concluded that the State had shown by clear and convincing evidence that J.C. "would suffer serious emotional trauma that would substantially impair the child's ability to communicate with the finder of fact if required to be confronted fact-to-face by the defendant." The district court explained that it had thoroughly considered all of the factors listed in Idaho Code section 9-1806 and that permitting an alternative method of testimony was appropriate.

On April 9, 2014, the State filed a motion to close the trial and to allow child-friendly procedures during J.C.'s testimony. At the hearing on the motion, Baeza objected to closing the courtroom and to some of the proposed child-friendly procedures. On April 18, 2014, the district court issued a second pretrial order regarding the alternative method of presenting the child's testimony. The district court concluded that "the trauma to the child from public testimony needs to be minimized to the extent reasonably possible." The district court explained that "[w]eighing [Baeza's] interests against [J.C.'s] the court concludes the public and [Baeza] should be excluded during [J.C.'s] testimony...." The order provided that Baeza would be "present, alone, in the small jury room during the victim's testimony, where he [would] be able to both see and hear the victim testify...." The district court also ordered that Baeza's family members would be permitted to view a live video feed of J.C.'s testimony in an adjoining courtroom.

Following the second pretrial order regarding the alternative method of presenting J.C.'s testimony, the presiding district judge recused himself and a new district judge was assigned. On

May 12, 2014, Baeza filed a motion to reconsider the order regarding J.C.'s testimony. Baeza argued that requiring Baeza and the public to leave the courtroom during J.C.'s testimony would have a prejudicial effect on his due process right to a fair trial. On July 15, 2014, the district court issued its Order re: Testimony by Alternate Method. The district court found that "there is clear and convincing evidence that the child could suffer serious emotional trauma that would substantially impair her ability to communicate with the jury if she is required to be confronted face-to-face by the Defendant." Based on that finding, the district court stated that "testimony by alternative means will be allowed, and this court has considered the factors in I.C. Sec. 9-1806." However, the district court ordered that instead of removing Baeza and his family from the courtroom during J.C.'s testimony, J.C. would testify via two-way closed-circuit television and that "the camera will be set in such a way that [Baeza] is not seen by the child."

At trial, prior to J.C.'s testimony, the district court instructed the jury not to give any different weight to J.C.'s testimony based on any of the child-friendly procedures that were in place:

> THE COURT: And, ladies and gentlemen, it's going to be obvious in a second, but [J.C.] is going to testify over a video link. There should be audio. So you're going to see that. And if we have to deal with that during the testimony, please bear with us.
>
> But I do have an instruction regarding that for you. So the instruction as to the testimony is this: Do not give any different weight to [J.C.'s] testimony because of the child-friendly procedures used during her testimony.

At the close of evidence, the district court again instructed the jury not to give different weight to J.C.'s testimony because of the manner in which her testimony was presented:

> THE COURT: Do not give any different weight to [J.C.'s] testimony because of the child-friendly procedures used during her testimony.

The jury found Baeza guilty of Count One and not guilty of Count Two. The district court sentenced Baeza to twenty years imprisonment, with ten years fixed. Baeza timely appealed.

## II. STANDARD OF REVIEW

"This Court freely reviews questions of law." *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 804, 367 P.3d 193, 199 (2016) (quoting *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011)). "Constitutional issues are purely questions of law over which this Court exercises free review." *Morgan v. New Sweden Irr. Dist.*, 160 Idaho 47, 51, 368 P.3d 990, 994 (2016).

## III. ANALYSIS

Baeza advances the following arguments on appeal: (1) allowing J.C. to testify through closed-circuit television violated Baeza's due process right to a fair trial and presumption of innocence; and (2) the district court failed to adequately consider the relative rights of the parties under Idaho Code section 9-1806. We address these arguments in turn.

**A. The district court's order allowing J.C. to testify by closed-circuit television did not violate Baeza's due process right to a fair trial or infringe on his presumption of innocence.**

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976).

> Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial."

*Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)). The U.S. Supreme Court has "recognized that certain practices pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.' " *Id.* at 568 (quoting *Estelle*, 425 U.S. at 503–504). If the Court finds an "inherently prejudicial practice," the Court considers whether it is "justified by an essential state interest specific to each trial." *Id.* at 568–69.

Thus, we must consider: (1) whether the alternative method of testimony ordered by the district court was inherently prejudicial; and, if so, (2) whether the alternative method of testimony served an essential state interest.

**1. The alternative method of testimony was not inherently prejudicial.**

Baeza argues that allowing J.C. to testify by closed-circuit television was inherently prejudicial because it presented an unacceptable risk of impermissible factors coming into play at trial. Baeza reasons that the use of closed-circuit television during J.C.'s testimony implicitly indicated to the jury that Baeza was a threat and invited the jury to determine his guilt or innocence on grounds outside the evidence presented at trial. We disagree.

In *Holbrook v. Flynn*, the U.S. Supreme Court considered whether having four conspicuous security personnel in the courtroom was inherently prejudicial and "should be

permitted only where justified by an essential state interest specific to each trial." *Id.* at 568–69. The Court in *Flynn* provided an illustrative sample of some practices that implicated the presumption of innocence and would be subject to close judicial scrutiny:

> Thus, in *Estelle v. Williams*, we noted that where a defendant is forced to wear prison clothes when appearing before the jury, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Id.*, at 504–505, 96 S.Ct. at 1693. Since no "essential state policy" is served by compelling a defendant to dress in this manner, *id.*, at 505, 96 S.Ct. at 1693, this Court went no further and concluded that the practice is unconstitutional. This close scrutiny of inherently prejudicial practices has not always been fatal, however. In *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Court emphasized that a defendant may be prejudiced if he appears before the jury bound and gagged. "Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id.*, at 344, 90 S.Ct., at 1061. Yet the Court nonetheless observed that in certain extreme situations, "binding and gagging might possibly be the fairest and most reasonable way to handle" a particularly obstreperous and disruptive defendant. *Ibid.*

*Id.* at 568. Our understanding of *Flynn* is that inherent prejudice is found where the practice in question may have a direct impact on the jury's perception of the defendant. The *Flynn* Court eventually determined that the presence of four uniformed state troopers in the courtroom was not inherently prejudicial due to "the wider range of inferences that a juror might reasonably draw from the officers' presence." *Id.* at 569. The Court explained:

> To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions "create the impression in the minds of the jury that the defendant is dangerous or untrustworthy." *Kennedy v. Cardwell*, 487 F.2d 101, 108 (CA6 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). However, "reason, principle, and common human experience," *Williams*, *supra*, 425 U.S., at 504, 96 S.Ct., at 1693, counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate.

*Id.*

We find that the same "reason, principle, and common human experience" found in *Flynn* is applicable to the present case. There are a number of reasons why a six-year-old child may testify using closed-circuit video. As noted by the State:

> It is easy for jurors to believe that the district court made allowances for a six-year-old to testify by alternate means because of her young age – and not that the

defendant is particularly dangerous or culpable. J.C. was given a child-friendly oath during her testimony, she was given crayons, she was allowed a coloring book, and a support person was allowed to be present during her testimony.

The alternative method used in this case suggested a focus on J.C. as a child rather than Baeza as the defendant. Indeed, the district court's introduction to J.C.'s testimony indicated that the use of closed-circuit video was a "child-friendly procedure." Further, although the district court directed that "the camera will be set in such a way that [Baeza] is not seen by the child," that information was unknown to the jury.[1]

Additionally, the jury was explicitly instructed, both during the trial and in the closing instructions, to not give any different weight to J.C.'s testimony due to the child-friendly procedures. "We presume that the jury followed the jury instructions given by the trial court in reaching its verdict...." *State v. Pepcorn*, 152 Idaho 678, 690, 273 P.3d 1271, 1283 (2012) (quoting *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011)); *State v. Rawlings*, 159 Idaho 498, 506, 363 P.3d 339, 347 (2015). We find no inherent prejudice in the district court's order allowing J.C. to testify by way of closed-circuit television.

### 2. The alternative method of testimony served an essential state interest.

To the extent that there may have been any prejudice to Baeza from the procedure used by the district court (and despite the district court's instructions to the jury), it was justified by an essential state interest. The U.S. Supreme Court has stated that protecting minor victims of sex crimes from further trauma is a compelling interest:

> We have of course recognized that a State's interest in the protection of minor victims of sex crimes from further trauma and embarrassment is a "compelling" one. We have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights.

*Maryland v. Craig*, 497 U.S. 836, 852 (internal quotations, citations, and alterations omitted). The Idaho Legislature emphasized the State's interest in protecting children from further trauma when it enacted Idaho Code section 9-1805, which authorizes judges to use alternative methods of child witness testimony in criminal proceedings to protect children from "serious emotional trauma;" and in noncriminal proceedings to "serve the best interests of the child." I.C. § 9-1805.

---

[1] We note that the outcome of this appeal may well have been different had the original order, entered prior to the change in judges, been implemented. Under the original order, Baeza and his family were to be removed from the courtroom during J.C.'s testimony and placed in private rooms where they could view J.C.'s testimony remotely. This approach would have focused entirely on Baeza and his family.

Baeza does not contend that the State has no interest in protecting children who are alleged victims of child abuse; however, he argues that the use of the alternative method of presenting J.C.'s testimony undermined the presumption of innocence.[2] We disagree.

Baeza attempts to contrast the present case with *Maryland v. Craig*, wherein the Court concluded that allowing an alternative method of witness testimony did not violate the Confrontation Clause because "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig*, 497 U.S. at 845. In *Craig*, the Supreme Court reasoned that "a literal reading of the Confrontation Clause would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Craig*, 497 U.S. at 848 (quoting *Ohio v. Roberts*, 448 U.S. 56, 61 (1980), *abrogated by Crawford v. Washington*, 541 U.S. 36 (2004)). The Court in *Craig* explained that the Confrontation Clause "reflects a *preference* for face-to-face confrontation" that must "occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 U.S. at 849 (emphasis original).

We do not view the alternative procedure employed by the district court as having any significant potential of diminishing Baeza's presumption of innocence in the eyes of the jury. For the same reasons that we do not agree with Baeza's contention that the use of closed-circuit television implicitly communicated to the jury that he presented some form of threat, we conclude that there was no appreciable possibility that the jury might have inferred from the use of the procedure that the district court viewed Baeza as guilty. Again, the district court explained that J.C. would be testifying by video as a "child-friendly procedure," which would have communicated to the jury that the reason for using the procedure related to concern for the child, rather than some indicia of Baeza's guilt. We hold that the remote possibility that any member of the jury would have interpreted the use of the procedure as reflecting the district court's view of guilt or innocence was outweighed by an essential state interest.

## B. Baeza's claim that the district court did not adequately consider the factors under Idaho Code section 9-1806 is without merit.

_____

[2] Baeza suggests that instead of the procedure used in this case to present J.C.'s testimony, "the courtroom or witness chair could be rearranged so the child would not have to look in the defendant's direction." We note that such a procedure would have a far greater potential for damage to the defendant's presumption of innocence, as it might suggest to the jury that the court had determined that the child witness required some form of protection from viewing the defendant.

Baeza argues that his judgment should be vacated because the district court did not adequately consider the relative rights of the parties before ordering the alternative method for J.C. to testify. Baeza contends that in both his response to the State's motion for an alternative method and in his motion for reconsideration, he challenged the alternative method under the Confrontation Clause and under his due process right to a fair trial and the presumption of innocence. Baeza argues that the district court only specifically addressed conflicting interests under the Confrontation Clause and did not address Baeza's presumption of innocence. Baeza concludes that: "By not addressing Mr. Baeza's assertions that the alternative method would violate his due process right to a fair trial by infringing on his presumption of innocence, the district court did not adequately consider the relative rights of the parties as required by I.C. § 9-1806." We disagree.

In *Poole v. Davis*, we considered a similar question in the context of the district court awarding attorney fees under Idaho Code section 54(e)(3) without providing a written explanation of its prevailing-party determination. *Poole v. Davis*, 153 Idaho 604, 607, 288 P.3d 821, 824 (2012). We reasoned:

> As we have explained, the law is clearly settled that when awarding attorney fees in a civil action, the district court must consider the I.R.C.P. 54(e)(3) factors, but need not make specific written findings on the various factors. This rule is based upon the text of Rule 54(e)(3), which sets forth the factors that the trial court shall consider in determining the amount of such fees. The plain language of the Rule does not require written findings on each factor, and the court's failure to specifically address each separate factor does not, by itself constitute a clear manifest abuse of discretion. Thus, in the context of the district court's determination of the amount of fees, the absence of written findings does not, *per se*, demonstrate an abuse of discretion.

*Id.* (internal quotations, citations, and alterations omitted). Our analysis here is the same. Idaho Code section 9-1806 provides:

> If the presiding officer determines that a standard under section 9-1805, Idaho Code, has been met, the presiding officer shall determine whether to allow the presentation of the testimony of a child witness by an alternative method and in so doing so shall consider:
>
> (1) Alternative methods reasonably available;
>
> (2) Available means for protecting the interests of or reducing emotional trauma to the child without resort to an alternative method;
>
> (3) The nature of the case;
>
> (4) The relative rights of the parties;

8

(5) The importance of the proposed testimony of the child;

(6) The nature and degree of emotional trauma that the child may suffer if an alternative method is not used; and

(7) Any other relevant factor.

I.C. § 9-1806. Absent from the plain language of the statute is any requirement that the district court provide findings as to each statutory consideration. Idaho Code section 9-1807(1) does provide the district court with one requirement: "An order allowing or disallowing the presentation of the testimony of a child witness by an alternative method must state the findings of fact and conclusions of law that support the presiding officer's determination." I.C. § 9-1807(1). Baeza does not challenge the district court's findings of fact or conclusions of law; rather, Baeza contends that because the district court did not specifically mention the presumption of innocence in its order, the district court did not adequately consider the parties' rights as required by Idaho Code section 9-1806(4).

In its original order regarding alternative methods of presenting J.C.'s testimony, the district court stated: "The Court has thoroughly considered all of the factors listed in I.C. § 9-1806." In its second pretrial order, the district court concluded: "Weighing the defendant's interest against the victim's the court concludes the public and the defendant should be excluded during the child victim's testimony, subject to the following conditions." In its final order on the subject, the district court stated: "[T]estimony by alternative means will be allowed, and this court has considered the factors in I.C. Sec. 9-1806." Thus, the record shows that at all times, the district court considered the relative rights and interests of the parties and Baeza's claim of error is without merit.

## IV. CONCLUSION

We affirm the judgment of conviction.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.