**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 45347**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **Boise, June 2018 Term** |
| | ) | |
| v. | ) | **Filed: August 6, 2018** |
| | ) | |
| LAURA LOUISE AKINS, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| Defendant-Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Honorable Richard S. Christensen, District Judge.

The decision of the district court is <u>affirmed</u>.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for respondent. Jenny C. Swinford argued.

_____

BRODY, Justice.

The State appeals from the dismissal of a charge against the defendant for her failure to notify of a death pursuant to Idaho Code section 19-4301A. The statute imposes a duty on persons who find or have custody of a body to promptly notify authorities. It also prescribes the punishment for failure to comply with that duty, including felony punishment for failing to notify with intent to prevent discovery of the manner of death. The question presented on appeal is whether the defendant's prosecution under this statute would violate her Fifth Amendment privilege against self-incrimination. We hold that it would based on the unique set of facts of this case and affirm the district court's decision to dismiss the charge.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In November 2015, Kimberly Vezina's body was found wrapped in a tarp and a shower curtain in Lake Coeur d'Alene. Law enforcement's investigation revealed that Laura Akins was suspected of disposing the body after Vezina died of a drug overdose. The investigation

1

established that on the morning of October 15, 2015, Vezina was found deceased in a bathroom of a house in Spokane Valley, Washington. At the time, Akins was living in the house with a collection of other occupants. The residence had been raided earlier that month and was known by local law enforcement as a place where significant drug use and distribution occurred. During the course of the investigation, multiple persons relayed suspicion that Vezina was the victim of an intentional overdose caused or ordered by a former resident.

Following the discovery of Vezina's death, one of the other residents directed Akins and another person who had been at the house, Lacy Drake, to dispose of the body at a lake house owned by Akins's relatives in Coeur d'Alene. This decision reflected that Akins and Drake had less extensive criminal records than the other occupants of the house. That evening, Akins and Drake were provided with a "burner" SUV in which the wrapped body had been placed in the rear cargo area. After briefly stopping at the lake house, Akins and Drake drove to a nearby public boat launch, unloaded the body, carried it to the dock, and dumped it into the water with an attached bag of cement. Three weeks later, the body was discovered by two fishermen who initially noticed the tarp on the surface of the lake and thereafter notified authorities. A subsequent coroner's examination confirmed that Vezina had died of combined drug toxicity.

The State charged Akins with one count of failure to notify of a death (I.C. § 19-4301A(3)) and one count of destruction of evidence (I.C. § 18-2603). As to the first count, the State specifically alleged

> [t]hat the defendant, Laura Louise Akins, on or about the 15th day of October, 2015, in the County of Kootenai, State of Idaho, having had custody of the body of Kimberly Sue Vezina, a human being who died, failed to notify or delayed notification to law enforcement or coroner of said death where the death would be subject to the coroner's investigation, with the intent to prevent discovery of the manner of death[.]

Akins moved to dismiss this count, contending that her prosecution under section 19-4301A violated her Fifth Amendment privilege against self-incrimination. Following a hearing on the motion, the district court issued a memorandum decision dismissing the count. The district court later entered a written order, from which the State now appeals.

## II.    STANDARD OF REVIEW

"This Court applies an abuse of discretion standard when it reviews a trial court's decision on a motion to dismiss." *State v. Eversole*, 160 Idaho 239, 244, 371 P.3d 293, 298 (2016) (citing *State v. Card*, 137 Idaho 182, 184, 45 P.3d 838, 840 (2002)). To determine if a

2

trial court abused its discretion, this Court considers whether the trial court perceived the issue as one of discretion, acted within the outer boundaries of that discretion, acted consistently with the applicable legal standards, and reached its decision by an exercise of reason. *Id.* (citing *State v. Joy*, 155 Idaho 1, 6, 304 P.3d 276, 281 (2013)). Akins's motion raised a constitutional challenge. "Constitutional issues are purely questions of law over which this Court exercises free review." *State v. Baeza*, 161 Idaho 38, 40, 383 P.3d 1208, 1210 (2016) (quoting *Morgan v. New Sweden Irrigation Dist.*, 160 Idaho 47, 51, 368 P.3d 990, 994 (2016)).

### III.    ANALYSIS

This appeal presents a question of first impression for this Court. The issue underlying Akins's motion was whether enforcement of section 19-4301A against her would be constitutionally permissible in light of her Fifth Amendment privilege against self-incrimination. The Fifth Amendment of the U.S. Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against compulsory self-incrimination has been incorporated against the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964); *see also* Idaho Const. art. I, § 13. In its application, the privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972) (citing *Hoffman v. United States*, 341 U.S. 479 (1951); *Blau v. United States*, 340 U.S. 159 (1950); *Mason v. United States*, 244 U.S. 362 (1917)). "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman*, 341 U.S. at 486.

Section 19-4301A is found amongst the criminal procedure statutes regarding coroner inquests. *See* I.C. §§ 19-4301 to 19-4310. The statute imposes a duty on persons who find or have custody of a body to promptly notify the coroner or appropriate law enforcement personnel and prescribes punishment for failures to comply with that duty:

> (1) Where any death occurs which would be subject to investigation by the coroner under section 19-4301(1), Idaho Code, the person who finds or has custody of the body shall promptly notify either the coroner, who shall notify the appropriate law enforcement agency, or a law enforcement officer or agency, which shall notify the coroner. Pending arrival of a law enforcement officer, the person finding or having custody of the body shall take reasonable precautions to preserve the body and body fluids and the scene of the event shall not be disturbed by anyone until authorization is given by the law enforcement officer conducting the investigation.

(2) Except as otherwise provided in subsection (3) of this section, any person who fails to notify the coroner or law enforcement pursuant to subsection (1) of this section shall be guilty of a misdemeanor and shall be punished by up to one (1) year in the county jail or by a fine not to exceed one thousand dollars ($1,000), or by both such imprisonment and fine.

(3) Any person who, with the intent to prevent discovery of the manner of death, fails to notify or delays notification to the coroner or law enforcement pursuant to subsection (1) of this section, shall be guilty of a felony and shall be punished by imprisonment in the state prison for a term not to exceed ten (10) years or by a fine not to exceed fifty thousand dollars ($50,000) or by both such fine and imprisonment.

I.C. § 19-4301A.

The duty to notify set forth in the first sentence of subsection (1)—i.e., the "reporting requirement"—is triggered when there is a death that is subject to a coroner's investigation under Idaho Code section 19-4301(1). A county coroner must investigate a death if:

(a) The death occurred as a result of violence, whether apparently by homicide, suicide or by accident;

(b) The death occurred under suspicious or unknown circumstances; or

(c) The death is of a stillborn child or any child if there is a reasonable articulable suspicion to believe that the death occurred without a known medical disease to account for the stillbirth or child's death.

I.C. § 19-4301(1). The remaining two subsections of section 19-4301A set forth misdemeanor and felony penalties for a failure to report. Misdemeanors are imposed for any failure except those occurring "with the intent to prevent discovery of the manner of death," which are subject to felony punishment. I.C. § 19-4301A(2)–(3).

Akins was charged with a felony under subsection (3). Based on the statute's language, for the State to enforce subsection (3), it was required to establish that Akins had an obligation to report under subsection (1). In her motion, Akins argued that her compliance with any obligation imposed by the statute would have forced her to provide potentially self-incriminating information. The district court agreed, finding that the State's charge would effectively punish Akins for her failure to incriminate herself, and that therefore her claim of privilege provided a full defense from prosecution. The State argues that this decision was incorrect for two reasons: (1) section 19-4301A did not require Akins to provide testimonial evidence, and (2) Akins's duty to comply with the statute's reporting requirement did not create a hazard of self-incrimination.

4

The State's first argument raises a significant threshold question because the statute must require compelled testimony for Akins's claim to have merit. The Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . ." *Schmerber v. California*, 384 U.S. 757, 761 (1966). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988). In the context of section 19-4301A, identification of oneself as someone with knowledge of the information that is required to be disclosed by the statute would constitute evidence of a testimonial nature. The State argues that the text of section 19-4301A only required Akins to report the fact of death and the location of the body, and that these details alone are not personally identifying. Akins responds that the statute contains no limit on the information that must be provided to comply with its reporting requirement, and that such silence should be read in her favor because it rests the ultimate determination of compliance with the prosecutor and law enforcement. She also points out that the statute requires the reporting individual to preserve the body until otherwise authorized, which eliminates the possibility of anonymous reporting and makes logical compliance with and application of the statute far more involved than the State contends.

On its face, the statute requires notification of authorities upon discovery or acquisition of custody of a body, and for the notifying person to "take reasonable precautions to preserve the body and body fluids and the scene of the event" until authorized otherwise by those authorities. I.C. § 19-4301A(1). Consistent with the State's argument, the plain language of the statute does not expressly mandate that the notifying person share any personally identifying information with the authorities. That said, other than notice, the statute offers no explanation of what information must be provided to fulfill the reporting obligation.

The district court did not directly address this issue in its written decision; however, its willingness to analyze the statute beyond this issue implies that it found the reporting requirement under section 19-4301A(1) demanding enough such that provision of testimonial evidence through the revelation of personally identifying information was guaranteed. This conclusion finds support in analogous case law where the constitutional privilege has applied to protect against prosecution under the federal misprision of felony statute, which reads:

5

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4.

While the language of the reporting requirement in the misprision statute does not expressly necessitate provision of personally identifying information, this statutory silence has not stopped courts from reaching a conclusion that the privilege applied because compliance with the requirement would threaten the defendant with a hazard of self-incrimination. *See, e.g.*, *United States v. Warters*, 885 F.2d 1266, 1275 (5th Cir. 1989); *United States v. Jennings*, 603 F.2d 650, 652–54 (7th Cir. 1979); *United States v. Kuh*, 541 F.2d 672, 677 (7th Cir. 1976); *United States v. King*, 402 F.2d 694, 697 (9th Cir. 1968); *see also Roberts v. United States*, 445 U.S. 552, 558–59 (1980); *id.* at 565 & n.3 (Marshall, J., dissenting); *United States v. Caraballo-Rodriguez*, 480 F.3d 62, 72 n.7 (1st Cir. 2007); *United States v. Weekley*, 389 F. Supp. 2d 1293, 1299 (S.D. Ala. 2005); *United States v. Graham*, 487 F. Supp. 1317, 1319–20 (W.D. Ky. 1980). It can be inferred from these decisions that statutory language requiring the reporting of personally identifying information is not essential for testimonial evidence to be compelled. We find this path to be correct with regard to section 19-4301A as well, and will further consider the statute with an understanding that compliance with its requirements results in the provision of testimonial evidence.

To that point, we turn to the State's second argument that Akins's duty to comply with the reporting requirement under section 19-4301A did not create a hazard of self-incrimination. The U.S. Supreme Court has unpacked a host of statutes that required reporting of information that, by its nature, may have been considered incriminating against the reporting party. The foundational case in this line of precedent is *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965). In *Albertson*, the Court set aside orders requiring the petitioners to register under a since-repealed provision of the Subversive Activities Control Act of 1950. *Id.* at 77–79. In so doing, the petitioners would have been forced to complete a registration form, which itself required admission of membership in the Communist Party. *Id.* at 77. The Court explained that admission of this kind could be used to prosecute the registering party under multiple federal criminal statutes, reaffirming previous holdings that "mere association with the Communist Party present[ed] sufficient threat of prosecution to support a claim of privilege." *Id.* at 77–78 (citing

6

*Patricia Blau v. United States*, 340 U.S. 159 (1950); *Irving Blau v. United States*, 340 U.S. 332 (1951); *Brunner v. United States*, 343 U.S. 918 (1952); *Quinn v. United States*, 349 U.S. 155 (1955)). Even beyond the admission of membership, the Court emphasized that registration required the petitioners to reveal identifying information that could be used as evidence or investigative material for future criminal prosecution. *Id.* at 78 (explaining that one of the forms required provision of "the organization of which the registrant is a member, his aliases, place and date of birth, a list of offices held in the organization and duties thereof").

The Court contrasted these circumstances with those presented in *United States v. Sullivan*, 274 U.S. 259 (1927), where it had held that a bootlegger could not invoke the Fifth Amendment as a basis for refusing to file an income tax return. *Id.* at 78–79 ("[I]f the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all." (quoting 274 U.S. at 263)). Distinguishing *Sullivan*, the Court in *Albertson* concluded as follows:

> In *Sullivan* the questions in the income tax return were neutral on their face and directed at the public at large, but here they are directed at a highly selective group inherently suspect of criminal activities. Petitioners' claims are not asserted in an essentially noncriminal and regulatory area of inquiry, but against an inquiry in an area permeated with criminal statutes, where response to any of the form's questions in context might involve the petitioners in the admission of a crucial element of a crime.

*Id.* at 79.

Shortly after *Albertson*, the Court held that the constitutional privilege was properly asserted in a handful of cases. *Marchetti v. United States*, 390 U.S. 39 (1968) (prosecution for violations of federal tax statutes requiring payment of wagering taxes, registration as party facilitating wagering activities, and filing of monthly returns to the Internal Revenue Service, and penalizing noncompliance); *Grosso v. United States*, 390 U.S. 62 (1968) (same as *Marchetti*); *Haynes v. United States*, 390 U.S. 85 (1968) (federal firearms statute requiring registration and penalizing unregistered firearm possession); *Leary v. United States*, 395 U.S. 6 (1969) (federal marijuana statute requiring registration as transferee of marijuana and payment of occupational taxes, and penalizing unregistered possessors and tax delinquents).

The primary case on the other end of the spectrum arrived a few years later. In *California v. Byers*, 402 U.S. 424 (1971), a plurality of the Court distinguished the above cases from one that arose from California's hit-and-run statute. The statute mandated the driver of any vehicle

involved in an automobile accident resulting in property damage to stop at the scene and provide his name and address to the owner of such property. *Id.* at 426 (citing to Cal. Veh. Code § 20002(a)(1) (1971)). Contrasting the *Albertson* decision, the plurality explained that the statute was found in California's Vehicle Code and was "essentially regulatory, not criminal," noting further that the California Supreme Court had explained that the statute "was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents." *Id.* at 430. The plurality also emphasized that the statute was "directed at the public at large" because it applied to all persons who drove in the state, and was therefore not aimed at a group that could be considered "highly selective" or "inherently suspect of criminal activities." *Id.* at 430–31. Reaching these conclusions, the plurality rejected the idea that compliance with the statute could pose a substantial hazard of self-incrimination:

> After having stopped, a driver involved in an accident is required by [the statute] to notify the driver of the other vehicle of his name and address. A name, linked with a motor vehicle, is no more incriminating than the tax return, linked with the disclosure of income, in *United States v. Sullivan*[, 274 U.S. 259]. It identifies but does not by itself implicate anyone in criminal conduct.
>
> Although identity, when made known, may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence. Here the compelled disclosure of identity could have led to a charge that might not have been made had the driver fled the scene; but this is true only in the same sense that a taxpayer can be charged on the basis of the contents of a tax return or failure to file an income tax form. There is no constitutional right to refuse to file an income tax return or to flee the scene of an accident in order to avoid the possibility of legal involvement.

*Id.* at 433–34 (footnote omitted).

After *Byers*, the Court similarly held that other statutes did not implicate the Fifth Amendment because they were part of generally applicable and noncriminal regulatory regimes of the state. *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 190–91 (2004) (rejecting privilege claim against state statute requiring any person to identify himself to a police officer after having been detained through a traffic or investigatory stop); *Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 559 (1990) (rejecting privilege claim against custody order requiring production of a child); *see also United States v. Ward*, 448 U.S. 242, 255 (1980) (rejecting similar Fifth Amendment argument because monetary penalty imposed by the Federal Water Pollution Control Act was a civil penalty and not a criminal sanction).

8

The statutory schemes at issue in all of these cases follow the same pattern: a requirement to report or otherwise provide information is imposed, and failures to comply with that requirement are penalized. So far, this squares with the provisions of section 19-4301A. The question then becomes whether there existed a hazard of self-incrimination. Since *Albertson*, the Supreme Court has considered two criteria when seeking to answer this question: (1) whether the statute targets a highly selective group inherently suspect of criminal activities *or* the public at large, and (2) whether the statute is surrounded by criminal provisions *or* part of a noncriminal regulatory scheme. Broadly, these criteria assess the statute's application and its purpose. If consideration of these criteria points to the former option under each, the hazard of self-incrimination is likely to be substantial. In *Albertson* and its ilk, the hazard was substantial, whereas in *Byers* and cases decided thereafter, the Court reached the opposite conclusion. It was through this window that the district court analyzed section 19-4301A. In so doing, the court concluded that the statute was closer to the *Albertson* mold, reasoning that it targeted a very narrow group inherently suspect of criminal activity with an offense that arose from an area of the law designed to facilitate criminal culpability. The State argues that the district court erred with regard to both criteria.

Specific to the first *Albertson* criterion, the district court found that Akins's charge of violating section 19-4301A(3) indicated that she was being specially targeted. The court reached this conclusion following two steps of statutory interpretation: First, it found that in light of the different circumstances of death that implicate the reporting requirement—as set forth by section 19-4301(1)— misdemeanor punishment under section 19-4301A(2) is directed at the public at large. In contrast, however, the court found that felony punishment under section 19-4301A(3) targets a much smaller and more suspect population because subsection (3) punishes only those violations that have been accompanied by "intent to prevent discovery of the manner of death." The court explained that this additional element meant that the provision focuses on a particular subset of persons who are incentivized to avoid criminal culpability by preventing the discovery of a death. This analysis goes too far.

When determining the group of persons that a statute applies against for this purpose, the focus must remain solely on the requirement to report. *See Byers*, 402 U.S. at 429 ("In order to invoke the privilege it is necessary to show that the *compelled disclosures will themselves*

9

confront the claimant with 'substantial hazards of self-incrimination.'" (emphasis added)). The reporting requirement of section 19-4301A is found in the first sentence of the first subsection:

> Where any death occurs which would be subject to investigation by the coroner under section 19-4301(1), Idaho Code, the person who finds or has custody of the body shall promptly notify either the coroner, who shall notify the appropriate law enforcement agency, or a law enforcement officer or agency, which shall notify the coroner.

I.C. § 19-4301A(1). This plain language makes clear that section 19-4301A broadly applies to any person who finds or has custody of a body. The intent element under subsection (3) prescribes punishment for certain violations of the statute; however, it does not in any way limit the scope of persons that must comply with the reporting requirement under subsection (1). With that being the case, it cannot be said that the statute targets any specific group, much less a highly selective one that is inherently suspect of criminal activity.

Despite that conclusion, the possibility of clear resolution within the *Albertson-Byers* spectrum is lost when the second criterion regarding the statute's purpose is considered. The State asserts that section 19-4301A is part of a regulatory regime designed to promote coroners' determinations of causes of death. The State points out that the noncriminal purpose of the statute was demonstrated by the fishermen who eventually discovered the body and notified law enforcement. Like the first criterion, the State argues that the purpose of section 19-4301A aligns with *Byers*. This time that argument is incorrect.

To start, there is a fundamental difference between section 19-4301A and the hit-and-run statute that was at issue in *Byers*. The California law compelled a driver to provide his name and address to "the owner or person in charge" of any property that was damaged in an accident. 402 U.S. at 426. With this wording, the California Supreme Court concluded that the statute was enacted to satisfy civil liabilities originating from automobile accidents. *Id.* at 430–31. The U.S. Supreme Court agreed with this interpretation, and held that the statute was sufficiently attenuated from possible criminal culpability. *Id.*; *id.* at 456–57 (Harlan, J., concurring in the judgment). In contrast, section 19-4301A(1) requires reporting of information directly to "either the coroner, who shall notify the appropriate law enforcement agency, or a law enforcement agency, which shall notify the coroner." Therefore, unlike the statute in *Byers*, the plain text of section 19-4301A dictates that the reported information must reach law enforcement.

10

Any remaining doubt as to the purpose of section 19-4301A is dispelled with review of the statute's legislative history. Subsection (1) constituted the entire statute when it was originally enacted in 1961. Act of Mar. 13, 1961, ch. 262, § 3, 1961 Idaho Sess. Laws 459, 461. In 2006, the statute was amended to include the pair of punishment provisions under subsections (2) and (3). Act of Mar. 30, 2006, ch. 239, § 1, 2006 Sess. Laws 724, 724. Applicable legislative committee minutes reveal that the impetus behind the new provisions was a 2004 case in Rexburg, Idaho, where the causes of death of a woman and her daughter could not be determined due to advanced decomposition because the deaths had occurred approximately three years and a year earlier, respectively. H. Judiciary, Rules & Admin. Comm., 58th Leg. 54 (2006). The husband and father who had continued to reside with the bodies throughout that time had not reported the deaths or otherwise cooperated with law enforcement, and had not been charged with a crime at the time of the amendment. *Id.* at 54–55. This history shows that section 19-4301A is far from the mere regulatory measure that the State claims it to be. Its original iteration may have functioned in this manner; however, the pointed legislative action that amended the statute reveals that it is meant to serve, at least in part, as a punishment device when other means of imposing criminal sanctions are not available.

Thus, on its face, the statute fits somewhere between *Albertson* and *Byers*: it applies against the public at large but carries with it an underlying criminal purpose. Notwithstanding the statute's facial posture, Akins moved the district court to consider section 19-4301A as it applied to the facts of her case. The parties debated the same question on appeal. Consideration of those facts reveals that we need not resolve today how to square any uncertainty arising from the statute's fit within the *Albertson* criteria. We conclude that the statute as applied to Akins violates her Fifth Amendment privilege.

In this case, the body was first discovered by persons in a house in Spokane Valley, Washington. Section 19-4301A does not reach extraterritorially and therefore it had no application when the body was first discovered. I.C. § 19-301(1). Instead, the statute only came into effect when Akins crossed the state line and entered Idaho. At that moment, Akins fit the category of persons identified under the first sentence of section 19-4301A(1)—namely, as charged by the State, she was a person having custody of a body in the State of Idaho. Accordingly, Akins was then obligated to report the information required by the statute. She did not, and the State's prosecution under section 19-4301A ensued.

11

The problem with this prosecution rests in the information that Akins was at that time required to report. The parties agree that at a minimum the language of section 19-4301(1) requires reporting of two pieces of information: (1) the existence of a dead body and (2) the location of that body. At all times for which the statute was in effect against Akins, the body was either in the rear cargo area of the SUV she occupied or in Lake Coeur d'Alene. Unlike the fishermen who eventually found the body and notified law enforcement, Akins did not have an ability to report her knowledge as to the existence and location of that body without informing law enforcement that she had carried it across the state line in an SUV she occupied and disposed of it in a lake. To find a threat of self-incrimination, we need to look no further than the fact that Akins would have effectively admitted to her commission of the State's charge of destroying evidence pursuant to section 18-2603 if she had reported in compliance with section 19-4301A. With this in mind, we find it difficult to invent a more substantial hazard of self-incrimination than the one that was actually presented here. As the facts of this case are applied, we hold that Akins's prosecution under the statute would violate her Fifth Amendment privilege against self-incrimination.

Although our analysis of section 19-4301A departs from that of the district court, we reach the same conclusion. Because we freely reviewed the same question that was at issue below, we find it appropriate to use the "right result-wrong-theory" rule to affirm the lower court's dismissal of the charge. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275–76, 396 P.3d 700, 704–05 (2017). In so doing, we also emphasize our rejection of the district court's analysis in so far as it could be interpreted as a judgment on the statute's constitutionality. Our holding here does not constitute a broad ruling on the general constitutionality of section 19-4301A, but instead is driven by the specific facts of this case. Those facts dictate that the statute's application against the defendant would be unconstitutional.

## IV.    CONCLUSION

Based on the foregoing, this Court affirms the decision of the district court to grant Akins's motion to dismiss.


Chief Justice BURDICK, Justices HORTON, BEVAN, and Justice Pro Tem MEDEMA CONCUR.